IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REATH ELIZABETH JONES,   :

    Plaintiff,   :

vs.   :   CA 09-0635-C

MICHAEL J. ASTRUE,   :
Commissioner of Social Security,
       :
    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Docs. 14 & 16 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's

brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

Plaintiff alleges disability due to cervical disc protrusion and lumbar strain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3. The claimant has the following severe impairments: Cervical Disc Protrusion and Lumbar Strain (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.**
>
> . . .
>
> **5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1967(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, can never work at dangerous heights; and can only occasionally stoop and crawl. Due to pain and concentration reducing side effects of medications, she is also**

---

[1] The Court granted the parties' request to waive oral argument. (*Compare* Doc. 15 *with* Doc. 13)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 14 & 16 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**limited to unskilled work.**

. . .

Although the claimant's allegations of limitations are not supported fully by the medical evidence, the most recent consulting examiner did indicate remaining limitations in her ability. Dr. Harris, in his narrative opinion, states that the claimant can do light or sedentary work []. Although some of his opinion provided on a physical capacities evaluation form is inconsistent with the treating sources, his narrative explanation of the claimant's examination including some reduced range of motion, tenderness to palpation in the area of the cervical spine, and his observation of "not significant" findings on the claimant's x-rays led him to the diagnosis of only cervical and lumbar strain []. The claimant is limited to the exertional requirements of light exertional work. Also, she can never climb ladders, ropes, or scaffolds; never work at dangerous heights; and occasionally stoop and crawl. Greater limitations caused by her back impairments are not supported by the medical evidence.

. . .

As for the opinion evidence, great weight is given to the opinion of Dr. Hubbs, her treating physician, who states that the claimant can return to work and has improved. His opinion is supported by his treatment notes of the claimant and is consistent with the opinions of the other treating sources.

The opinion of Dr. Harris listed on the Medical Source Statement form is given no weight. His opinion regarding the claimant's exertional abilities on this form is not supported by his narrative response due to several inconsistencies[,] [o]ne of which is including the specific ability to perform light or sedentary work in his narrative and significantly diminished abilities beyond even sedentary work indicated on his form. His opinion is also inconsistent with the claimant's treating

physicians. His only basis identified for the limitations o[n] the form is the claimant's complaints of back and neck pain alone. He does not refer to any diagnostic test results or clinical findings at all. However, some weight is given to his narrative explanation since it is more consistent with the treating opinion evidence and supported by his explanations and findings from the examination of the claimant.

The opinion of Dr. White is also given some weight. While he has treated the claimant, his brief treatment does not include opinions regarding functioning, and he examined the claimant only once. Therefore, his treating relationship with the claimant is not as extensive as Dr. Hubbs. However, his treatment notes are consistent with the other treating opinions and the treatment notes from Grove Hill healthcare providing support to Dr. Hubbs['] opinion.

The opinion of Kevin Johnson, P.A. has also been considered by the undersigned. Although he is not an acceptable medical source, his treatment notes are not inconsistent with the opinions of her treating physicians, and his conservative, infrequent treatment suggests no additional limitation than designated by any other source.

In sum, the above residual functional capacity assessment is supported by the lack of treatment sought, the conservative treatment received, the effectiveness of over-the-counter medications, the lack of ongoing prescribed narcotic or other pain medications, the lack of confirmatory MRI results or other diagnostic radiology results, the infrequency of clinical signs observed, the claimant's activities of daily living, and the medical opinion of Dr. Hubbs.

**6. The claimant is capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

> In order for past work to be considered past relevant work, it must be substantial gainful activity performed within the last fifteen years for long enough to learn the job. She states that she earned $6.75 per hour and worked eight hours a day for five days a week []. The claimant's earnings record also confirms that she earned above the required amount to be considered substantial gainful activity . . . . The claimant reports that she worked as a sewing machine operator from April 2005 until May 10, 2007 []. Therefore, the claimant's work as a sewing machine operator is past relevant work.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The vocational expert witness testified that the claimant's past relevant work as a sewing machine operator is classified by the Dictionary of Occupational Titles as DOT Code 786.685-030. She testified that this work is light work with an SVP of 2, i.e., unskilled work. According to the *Dictionary of Occupational Titles*, this work as a sewing machine operator requires constant reaching, handling, and fingering; frequent near acuity; depth perception; and occasional color vision. Therefore, the claimant's past relevant work as a sewing machine operator would not be precluded by the claimant's residual functional capacity.
>
> **7. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2007 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 12, 13, 15-16 & 16-17 (emphasis in original)) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past work as a sewing machine operator, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial

evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1.   Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2.   Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3.   Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers

---

[3] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

throughout the national economy.[4]

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ relied upon test three above to determine that Jones can perform her past work as a sewing machine operator. (Tr. 17 ("In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The vocational expert witness testified that the claimant's past relevant work as a sewing machine operator is classified by the Dictionary of Occupational Titles as DOT Code 786.685-030. She testified that this work is light work with an SVP of 2, i.e., unskilled work."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the

---

[4] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . her  PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision.  Any case requiring consideration of PRW will contain

9

> enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

In this case, the plaintiff contends that the ALJ committed the following errors: (1) his finding that she can perform light work is not based on substantial evidence given that it is based on a lack of medical treatment, her activities of daily living, and a temporally remote opinion of a treating physician; (2) his finding that she can return to her past relevant work as a

sewing machine operator is not based on substantial evidence since it disregards the testimony of the vocational expert; and (3) his finding that she can perform light work is not based on substantial evidence given the unrebutted evidence that she is limited to occasional handling and fingering and she can never reach.

    **A.**    <u>**Lack of Treatment, Activities of Daily Living, etc**</u>. Plaintiff's first contention is that the ALJ's finding that she can perform light work is not supported by substantial evidence because it is based on his observations regarding a lack of medical treatment, her activities of daily living, and a temporally remote opinion of a treating physician. While it is true that the ALJ made the summary observation that his residual functional capacity assessment was supported, in part, "by the lack of treatment sought . . ., the claimant's activities of daily living, and the medical opinion of Dr. Hubbs[,]" (Tr. 17), he also noted that his finding was supported by "the conservative treatment received, the effectiveness of over-the-counter medications, the lack of ongoing prescribed narcotic or other pain medications, the lack of confirmatory MRI results or other diagnostic radiology results, [and] the infrequency of clinical signs observed[.]" These are all valid observations[5] and

---

[5]     For instance, the Court would parenthetically note that the regulations do not "prevent the ALJ from considering a claimant's daily activities at the fourth step of the

convey the ALJ's overarching point that the record as a whole supports a finding that plaintiff can perform the physical and mental requirements of light work activity. While the ALJ perhaps incorrectly noted the lack of treatment sought by plaintiff, given her testimony that she was without health insurance (*see* Tr. 48), the undersigned finds this observation harmless in light of the clear evidence of record that the doctors who treated plaintiff after her accident never noted any functional limitations or clinical findings that would be inconsistent with or prevent her from performing the functional requirements of light work or her past work as a sewing machine operator. In fact, plaintiff's own treating physician, Dr. David Hubbs, indicated, in or around July of 2007, that he thought she should target going back to work in August of 2007. (Tr. 307)[6] In addition, the consultative physician, Dr. R. Rex Harris, who examined Jones some twenty (20) months later, on March 18, 2009, indicated in his narrative report that it was his "medical opinion" that plaintiff was "capable of light to sedentary work in the work place." (Tr. 329) Accordingly, the Court finds, contrary to the argument of plaintiff, not only that the ALJ's

---

sequential evaluation process." *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

[6] Although plaintiff characterizes this opinion as "remote," the undersigned cannot agree with this contention given plaintiff's alleged disability onset date of May 10, 2007. (*Compare id. with* Tr. 12)

convey the ALJ's overarching point that the record as a whole supports a finding that plaintiff can perform the physical and mental requirements of light work activity. While the ALJ perhaps incorrectly noted the lack of treatment sought by plaintiff, given her testimony that she was without health insurance (*see* Tr. 48), the undersigned finds this observation harmless in light of the clear evidence of record that the doctors who treated plaintiff after her accident never noted any functional limitations or clinical findings that would be inconsistent with or prevent her from performing the functional requirements of light work or her past work as a sewing machine operator. In fact, plaintiff's own treating physician, Dr. David Hubbs, indicated, in or around July of 2007, that he thought she should target going back to work in August of 2007. (Tr. 307)[6] In addition, the consultative physician, Dr. R. Rex Harris, who examined Jones some twenty (20) months later, on March 18, 2009, indicated in his narrative report that it was his "medical opinion" that plaintiff was "capable of light to sedentary work in the work place." (Tr. 329) Accordingly, the Court finds, contrary to the argument of plaintiff, not only that the ALJ's

---

sequential evaluation process." *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

[6] Although plaintiff characterizes this opinion as "remote," the undersigned cannot agree with this contention given plaintiff's alleged disability onset date of May 10, 2007. (*Compare id. with* Tr. 12)

RFC assessment is based on more than just a lack of medical treatment, her activities of daily living, and the opinion of Dr. Hubbs, but, as well, that assessment is supported by substantial evidence in the record (*see* Tr. 229-329).

      **B.**    **Vocational Expert's Testimony**. Plaintiff next contends that the ALJ's finding that she can return to her past relevant work as a sewing machine operator is not based on substantial evidence since it disregards the testimony of the vocational expert. The undersigned disagrees.

      There were two hearings in this case. The initial hearing was held on February 19, 2009 (Tr. 31-51) and the second hearing was conducted on May 21, 2009 (Tr. 20-30), after Jones was consultatively examined by Dr. Rex Harris (*compare* Tr. 50 ("I think what I've got to do at this point is to get that orthopedic specialist to check you out.") *with* Tr. 328-335 (March 18, 2009 examination report and medical source statement of Dr. Harris) *and* Tr. 28-29 (vocational expert's testimony)). The ALJ established through the vocational expert that plaintiff's work as a sewing machine operator appears in the Dictionary of Occupational Titles, with an assigned number of 786.685-030, and falls in the light exertional category with an SVP of two. (Tr. 28-29) Thereafter, the ALJ posed one hypothetical to the VE, as follows:

13

> Q    Okay. Now Ms. Berthaume, I guess it's fairly obvious, but I just want to ask it nonetheless. Dr. Harris was kind enough to fill out a form giving his thoughts on what the claimant was able to do or not do. And he basically said that she was not able to really carry or lift any weight, and could only sit for ten minutes at a time, and could only stand for five minutes at a time, and could only sit, stand or walk for about five hours in an eight-hour day. If that is an accurate portrayal of the claimant's abilities and inabilities, would it be fair to say there's no full-time work . . . in the national economy that she could sustain?
>
> A    Yes

(Tr. 29)

The ALJ, of course, qualified his question to the VE with the introduction "[i]f that is an accurate portrayal of the claimant's abilities and inabilities," (*id.*) and because the ALJ ultimately, and correctly, determined that Dr. Harris' medical source statement was not an accurate portrayal of Jones' abilities and inabilities, obviously he was not bound by the VE's response that there would be no jobs in the national economy that plaintiff can perform.  In other words, because Dr. Harris' medical source statement is not supported by any evidence in the record, including Dr. Harris' own findings on physical examination of plaintiff, the VE's testimony based on that medical source statement is obviously not supported by substantial evidence and need not be credited. *Cf. Crawford v. Commissioner of Social Security,* 363 F.3d

1155, 1161 (11th Cir. 2004) (an ALJ need not include findings in the hypothetical question posed to the VE that the ALJ has properly rejected as unsupported in the record); *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). Moreover, while it is certainly permissible for an ALJ to utilize a vocational expert's testimony at step four of the sequential evaluation process, it is not required, *Hennes v. Commissioner of Social Security Administration*, 130 Fed.Appx. 343, 345 (11th Cir. 2005) ("[A]lthough VE testimony is not required in determining whether a claimant can perform her past relevant work, the regulations provide that 'the services of vocational experts or vocational specialists' may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy[.]'" (internal citations omitted)),[7] and need not be utilized when based on limitations not supported by the record, *cf. Griffis v. Astrue,* 619 F.Supp.2d 1215, 1223 (M.D. Fla. 2008)

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

("Certainly the ALJ may disregard vocational testimony given in response to [] hypotheticals which the ALJ ultimately determines do not accurately portray the claimant's RFC and vocational characteristics, however, the ALJ must properly discredit the facts underlying those alternate hypotheticals."); *Dunaway v. Astrue*, 2008 WL 1897603, *5 (M.D. Fla. 2008) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. ***But the hypothetical need only include limitation supported by the record***. An ALJ's failure to include claimant's severe impairments in a hypothetical question to a VE is reversible error where the ALJ relied on that VE's testimony to make a disability determination." (internal citations omitted; emphasis supplied)). Because, as explained more fully in the next section of this opinion, the ALJ properly rejected the medical source statement filled out by Dr. Harris he was not bound to accept the VE's testimony based on that statement.

    **C.**    **Occasional Handling and Fingering; No Reaching**. Plaintiff's final argument is that the ALJ's determination that she can perform light work is not based on substantial evidence given the un-rebutted evidence that she is limited to occasional handling and fingering and may never perform reaching

movements. The document which contain these findings is, of course, Dr. Harris' medical source statement. (Tr. 330-335; *id.* at 332 (though noting no particular medical or clinical findings supporting his assessment of limitations, Harris noted that plaintiff can never reach with either hand and can only occasionally handle, finger and feel))

It is clear in this circuit that an ALJ may reject any medical opinion if the evidence supports a contrary finding, *Sryock, supra,* 764 F.2d at 835, and that even the opinion of a treating physician, which must be given substantial or considerable weight under most circumstances, is entitled to no weight if not bolstered by the evidence, where the evidence supports a contrary finding, or where it is conclusory or inconsistent with the physician's own medical records, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In this case, Dr. Harris' medical source statement is not only conclusory but it is inconsistent with his own examination findings (Tr. 328-329 ("The patient self limits with abduction at 90 degrees and with forward extension and flexion of approximately 20 degrees. There is full range of motion of the elbows, wrists, and fingers. Grip is normal bilaterally. Reflexes are 2+ and equal in the upper extremities. Sensation is normal in the upper extremities. There is no evidence of atrophy in the upper extremities. There is lumbar flexion of 70

degrees, extension of 5, lateral motion of 10. Reflexes are 2+ and equal in the lower extremities. Sensation is normal in the lower extremities. The patient can toe and heel walk. She can squat and rise.") and stated medical opinion that plaintiff "is capable of light to sedentary work in the work place." (Tr. 329) Moreover, Harris' medical source statement is not bolstered by the remaining evidence of record; instead, the remaining medical evidence of record supports a contrary finding (*see* Tr. 229-329).[8] Accordingly, rather than being unrebutted, Dr. Harris' "findings" that plaintiff can never reach with either hand and can only occasionally handle and finger were properly rejected by the ALJ.

Because plaintiff raises no other issues and has not satisfied her fourth-step burden of demonstrating the inability to return to her past relevant work

---

[8] The only other evidence in the record consistent with Harris' medical source statement is plaintiff's testimony. In fact, plaintiff's testimony at her February 19, 2009 hearing regarding how long she can sit, stand and walk before experiencing pain (Tr. 46-47 (she can sit "[m]aybe five, ten minutes[,]" stand "maybe five minutes[,]" and walk "probably five, ten minutes")) is all but identical to the "findings" made by Harris on the medical source statement (*compare id. with* Tr. 331 (plaintiff can, at one time without interruption, sit for 10 minutes, stand for 5 minutes, and walk for 10 minutes)). This uncanny harmony of opinion, along with Harris' conclusion in his medical report that plaintiff is capable of performing light and sedentary work and his failure to point to any medical or clinical findings (only pain) in support of the limitations noted on his medical source statement, cause this Court to conclude that Harris impermissibly based his findings on the medical source statement on Jones' subjective complaints of pain as opposed to any objective medical or clinical findings. This is but an additional reason why it is appropriate for this Court to conclude that the ALJ properly gave no weight to the findings set forth by Harris on the medical source statement.

as a sewing machine operator, *Jones, supra*, 810 F.2d at 1005,[9] the Commissioner's decision denying plaintiff benefits is due to be affirmed.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 31st day of March, 2010.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[9] The evidence of record establishes that plaintiff can perform the physical and mental requirements of light work and, further, that she can perform the physical and mental demands of her past relevant work as a sewing machine operator. (Tr. 229-329)